No. 46,675

THE STATE OF KANSAS, *Appellee,* v. THEODORE W. FORD, *Appellant.*

(502 P. 2d 786)

Opinion filed November 4, 1972.

*T. L. O'Hara,* of Wichita, argued the cause and *Bruce B. Fitts,* of Wichita, was with him on the brief for appellant.

*David P. Calvert,* deputy county attorney, argued the cause, and *Vern Miller,* attorney general, and *Keith Sanborn,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: Appellant was convicted by a jury of aggravated robbery and he appeals. This was appellant's second trial for this offense, his first having resulted in a hung jury. His appeal turns on the state's use at this second trial of the recorded testimony of a missing witness, one Emmett L. Dean, Jr., who had testified at the first trial. The facts of the crime are important only insofar as they are reflected in Dean's testimony.

The charge stems from the holdup at gunpoint of Lee's liquor store in Wichita the evening of December 11, 1970. The robbers were two in number: as Mr. Lee put it, "one of them was dressed like a woman and this other one was dressed like an ordinary man." The one dressed as a man is alleged to have been the appellant;

the other, one Tommy Abraham. The net proceeds of the robbery comprised three bottles of liquor.

The following day investigating officers had the witness Dean in custody and took a statement from him of his activities on the night of the robbery. In this statement Dean recounted spending the evening in the intermittent company of appellant and Abraham. The trio at one point were driving around in Abraham's car, and there was some discussion of robbing a liquor store. Abraham was dressed in a woman's pant suit, "hillbilly" hat and blue gloves, wore lipstick and other makeup, and carried a woman's handbag. They parked on a side street near the Lee liquor store, where appellant and Abraham left Dean alone in the car. He was under the wheel when they returned and announced that they had just robbed a liquor store, and that he should drive if he didn't want to go to jail. Dean saw appellant with a gun, and Abraham later told him he had three bottles of liquor in his bag. Dean's statement also told of driving them from the robbery scene to Abraham's house where the two robbers changed clothes, and of other activities until his arrest the next morning.

A tape recording was made of Dean's entire statement, which was later transcribed. The recording and the transcription each figure in this case.

At appellant's first trial Dean appeared as a witness. The morning before he testified he reaffirmed the truth of his earlier statement in a conversation with the detective who took it. On the witness stand, however, Dean told a wholly different story. In his new version Dean had borrowed Abraham's car and was driving it near 15th and Mosley when he was accosted by two strangers, a man and a woman. They talked him into giving them a ride, and he obliged; for half to three quarters of an hour they visited various parts of Wichita. Eventually their wanderings took them to the neighborhood of Lee's liquor store, where the persuasive couple induced Dean to park on a side street and wait for them while they took a three or four minute walk at about the time the store was robbed. Upon their return to the car he drove them back to 15th and Mosley dropped them off. He never saw them again.

The prosecutor, needless to say, was amazed to hear about this nameless couple (the man·"said his name was Bill something") who, seemingly must have committed the robbery the state had charged to the appellant and Abraham. Dean was forcefully reminded of

his prior statement; he was quizzed about the questions asked and his answers to them in some detail. As to many of them Dean professed a complete lack of memory, as to others he denied the accuracy of the transcript.

Appellant's counsel cross-examined Dean at some length, particularly about the prior statement. His efforts were largely directed to discrediting the statement by suggesting that Dean was drunk when he made it and that it was coerced by threats from the detectives. He elicited from Dean that, regardless of what he may have said in the statement, his present testimony was the correct version.

The state then, through a detective, commenced to lay a foundation for the admission of the taped statement. Dean was excused from further attendance at the trial with the express consent of appellant, and after proper identification the tape recording was played to the jury.

That trial, as indicated, resulted in a hung jury. On retrial, Dean proved unavailable as a witness. Over appellant's objection the state introduced his testimony at the first trial, and also the impeaching statement—this time by way of the written transcript rather than by playing the tape.

Appellant's objection below and his main claim of error here are both based on his contention that the state failed to use "due diligence" in its efforts to procure Dean's attendance. The rule requiring the state to use every reasonable effort to produce a missing witness before introducing his prior testimony is of long standing, and is recognized in such cases as *State v. Washington,* 206 Kan. 336, 479 P. 2d 833, Syl. ¶ 2; and *State v. Bonskowski,* 180 Kan. 726, 308 P. 2d 168.

Appellant argues that the state could not show reasonable diligence in any event because its subpoena for Dean was issued only on the morning the trial began. We believe his argument fails in the light of the state's evidence showing not only the effort to produce Dean, but the background against which its reasonableness must be judged.

The first subpoena for Dean was issued March 25, 1971, for his appearance at appellant's first trial. The address on East 23rd Street which Dean had given the detectives was found to be empty, but he was eventually located at his place of work. There, on March 30, 1971, a deputy sheriff served him when his foreman called him to

the office. He appeared in response to this subpoena and gave the testimony summarized above.

A second subpoena was issued April 15, 1971, for Dean's appearance April 19 at the trial of Appellant's companion Abraham. It was served on him the same day it was issued, at the same place and in the same manner as the first subpoena.

A third subpoena, the one in question here, was issued on April 27, 1971, for his appearance the next day. In the morning a deputy proceeded again to the office at Dean's place of employment, and the by now customary call was put out over the public address system for Dean to come to the office. When this failed to produce the usual result, an inter-office telephone call was made to Dean's foreman. At this point Dean was observed through the office window punching out at the time clock and leaving by the back door. The deputy promptly made an effort to head him off, but was unsuccessful. After a quick trip around the building the deputy concluded that Dean had "disappeared real fast."

For the next day and a half officers of the sheriff's office and police department attempted to locate Dean at the addresses he had given previously, at work, and at potential addresses they had secured on their own initiative. After hearing evidence showing the foregoing, the trial court made the following rule:

"Court finds that a subpoena was issued, the correct address was issued on the subpoena, and that Mr. Dean was at the address where the subpoena listed he would be. And that when the officer arrived there, Mr. Dean left and has managed to evade process from that time to this, and is, therefore, unavailable as a witness. And it is moot to discuss other possible addresses when the address that was listed was accurate and the witness was there when the process server was there with his subpoena. If he is located—I understand there's an order out for his apprehension—no copy of any previous testimony will be used. If he is not able to locate him, the previous testimony will be used. The Court will not be thwarted by the activities of persons who attempt to evade the issuance of process."

While the state might well have allowed itself more time in which to serve Dean, we cannot say it was guilty of bad faith or even culpable neglect in failing to do so. It had twice previously served Dean without trouble, and he had responded to those subpoenas. Although he was a reluctant, even hostile witness, he had given no reason to suppose he would evade service on this occasion. There is also no reason to think that, as an obviously determined fugitive, he could not just as successfully have evaded process even if the state had had a few more days to look for him.

In *State v. Guthrie,* 192 Kan. 659, 391 P. 2d 95, Syl. ¶ 1, we said under similar circumstances:

"When the trial court in a criminal action is satisfied from the evidence adduced by the state that it has made every reasonable effort to produce the attendance of a witness, and is unable to do so, the testimony of such witness, given at a previous trial of the accused which resulted in a hung jury, may be introduced at the trial and read to the jury."

Cf. also, *State v Bonskowski,* supra; *State v. Streeter,* 173 Kan. 240, 241, 245 P. 2d 1177, and cases cited therein. The trial court was satisfied with the efforts of the state, and so are we. We conclude that the trial court did not err in admitting Dean's testimony from the first trial.

Appellant finally argues that even if Dean's prior testimony was admissible the impeaching statement was not. He cites the rule set out in *State v. Sorter,* 52 Kan. 531, 34 Pac. 1036, Syl. ¶ 5:

"While ordinarily a party may not impeach his own witnesses, nor offer evidence for that purpose, he is not conclusively bound by the statements which the witness may make; and where a party has been entrapped or deceived by an artful or hostile witness, he may examine such witness as to whether he had not previously made contrary statements; and may, in the discretion of the court, be permitted to show what such contrary statements were."

Similar statements may be found in more recent cases such as *State v. Collins,* 204 Kan. 55, 460 P. 2d 573; and *State v. Jones,* 202 Kan. 31, 446 P. 2d 851. Cf. *State v. Gauger,* 200 Kan. 515, 438 P. 2d 455.

Dean, appellant says, did not "entrap" the state at the second trial since the prosecution knew full well what his recorded testimony contained. Hence, he argues, the state could not impeach its own witness. Further, since Dean was not present and available for cross-examination at the second trial his statement was not admissible under the exception to the hearsay rule found in K. S. A. 60-460 (*a*).

The first part of this argument is answered by K. S. A. 60-420, authorizing "any party including the party calling him" to examine a witness as to his credibility and to "introduce extrinsic evidence concerning any conduct by him and any other matter relevant upon the issues of credibility." The liberalizing effect of this statute on the traditional evidentiary rule was recognized in *State v. Armstrong,* 207 Kan. 681, 687-88, 486 P. 2d 1322. See also, *State v. Harden,* 206 Kan. 365, 377, 480 P. 2d 53; *State v. Collins,* 204 Kan. 55, 59, 460 P. 2d 573. Thus the state was free to impeach Dean

even though he was the state's witness, and even though the state could not plead surprise at the second trial.

This freedom to impeach is subject to the qualification of K. S. A. 60-422 (*b*) that the impeaching statement "may in the discretion of the judge be excluded unless the witness was so examined while testifying as to give him an opportunity to identify, explain or deny the statement." Dean was confronted at length with his prior contradictory statement and was subjected to full cross-examination about it at the first trial. Since the witness had ample opportunity to "identify, explain or deny" the statement the trial judge was not even called upon to exercise his discretion to exclude or admit it.

The lattter part of appellant's argument on this point is based on *Thompson v. Norman,* 198 Kan. 436, 424 P. 2d 593. In that case the defendant sought to contradict the deposition testimony of a missing witness by means of a statement the witness had purportedly made to defendant's sister. The trial court refused to admit the statement, and we affirmed. The witness had not been confronted with the statement during the taking of the deposition, and there had been no opportunity to cross-examine him with reference thereto. This court held simply that, under those circumstances, the witness was not "present at the hearing and available for cross-examination" so as to make the statement admissible under the hearsay exception of 60-460 (*a*). Its exclusion was also held to have been proper under 60-422 (*b*) as a fair exercise of the trial court's discretion, again because the witness had not had an opportunity to "identify, explain or deny" the statement. (*Id.,* 198 Kan. at 444.) In the case at bar, as discussed above, there was such confrontation and cross-examination at the first trial. *Thompson v. Norman* is therefore not controlling; on the contrary, by negative implication it suggests that because there *was* confrontation here the statement was admissible.

In this case Dean's prior recorded statement could well be viewed as an integral part of his testimony. Without it, his testimony at the first trial would have been incomplete at best. We note that had Dean been served and been present at the second trial the state could have used the prior statement under the 60-460 (*a*) hearsay exception without ever calling Dean. The defense could then have called him and through cross-examination elicited his explanation—presumably the same as given in his prior testimony. As it was, the jury had the benefit of his explanation before it heard the state-

ment. Of course it would have been better to have had Dean present in person, but we agree with the trial court that justice and the courts should not be "thwarted by the activities of persons who attempt to evade the issuance [service] of process." We believe that if Dean's testimony was admissible at the second trial, as we are holding, the impeaching statement was also admissible.

There being no error the judgment is affirmed.

APPROVED BY THE COURT.