No. 48,010

STATE OF KANSAS, *Appellee,* v. EUGENE M. STEWARD, *Appellant.*

(547 P. 2d 773)

Opinion filed March 6, 1976.

*Robert W. Harris,* of Harris, Sheeley & Hills, (court-appointed), of Kansas City, argued the cause and was on the brief for the appellant.

*Philip L. Sieve,* Assistant District Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, and *Nick A. Tomasic,* District Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant-appellant, Eugene M. Steward, appeals from convictions by a jury of first degree murder (K. S. A. 21-3401); rape (K. S. A. 21-3502); aggravated battery (K. S. A. 21-3414); and two counts of aggravated robbery (K. S. A. 21-3427). The charges arose out of an incident occurring on April 13, 1974, at the home of Billy and Betty Walker in which two armed men killed and robbed Billy and robbed, raped and committed aggravated battery against his wife, Betty.

On the day in question Betty entered her home at 1000 Quindaro Street, Kansas City, Kansas at approximately 1:00 p. m. She was met by two men armed with shotguns who told her they were there for the purpose of fulfilling a contract in which they had undertaken to take the lives of Mr. and Mrs. Walker. Betty testified that as they

waited for her husband to come home, defendant raped her while his accomplice, Marlowe King, held a shotgun on her.

Upon his arrival a short time later, Billy Walker was accosted by the two armed assailants. Money was taken from his person and during a scuffle Billy was shot in the back with a shotgun held by Marlowe King. The wound proved to be fatal. Upon viewing these happenings Betty lost consciousness. She next remembered awakening in the back yard of her home and discovering that she was bleeding from a wound in her neck. She summoned help and was taken to a hospital. It was later discovered that Billy Walker's throat had also been cut with a sharp object.

After Betty was released from the hospital she was shown some mug shots by police and picked out two faces which she thought resembled the assailants. Betty was driven to Olathe by two detectives where she viewed the two men pictured in the mug shots. The detectives testified that a line-up was not conducted because the two suspects were the only two black men in jail or otherwise available for a line-up. Betty identified these men as the assailants and when asked if she was sure, said "Yes, that's them." These men were then charged with the crimes. However, after further investigation by the police, the charges against these suspects were dismissed.

On May 31, 1974, defendant was arrested by Kansas City, Kansas police in the company of one Michael Haygood and Marlowe King on charges unrelated to this appeal. When arrested, defendant was driving an automobile owned by Haygood. Following the arrest a warrant was obtained for a search of the automobile. The search revealed weapons in the glove compartment and a shotgun and a portable sewing machine in the trunk. Among items known by police to have been missing from the Walker home, following the April 13 incident, was a portable sewing machine owned by Betty Walker.

Based on this lead, police detectives sent a new series of mug shots to Betty Walker who had moved to Shreveport, Louisiana, where she resided with her mother. The series included shots of defendant and Marlowe King, as well as the shots of the original Olathe suspects and others. Thereafter, Detective Parks of the Kansas City, Kansas Police Department received a letter from Betty stating that she must change her identification of the assailants and named the mug shots of defendant and Marlowe King as being the two individuals who had attacked her and her husband.

Betty was returned to Kansas City and selected Marlowe King out of a line-up, positively identifying him as one of her assailants. The following day she likewise positively identified the defendant from a line-up. She also identified the portable sewing machine taken from the trunk of Haygood's automobile as being the one taken from her home on April 13, 1974.

A preliminary hearing was held and defendant was bound over for trial. He was arraigned on August 16, 1974, at which time he pled not guilty.

On October 31, 1974, the case was specially set for trial for the week of November 18, 1974. On November 11, 1974, an entry was made on the trial docket "Case continued for 30 days for lack of time to try the case due to pending trials." This entry was initialed "H. M." by Judge Harry Miller, the administrative judge of the Wyandotte District Court. On November 15, 1974, defendant filed a motion for discharge based on K. S. A. 22-3401 and 22-3402 (speedy trial), which was heard and denied by the trial court on December 9, 1974. On December 12, 1974, the jury announced its inability to reach a unanimous verdict and a mistrial was declared by the court.

After defendant's first trial Mr. William Roberts withdrew as his attorney and Mr. Robert Harris, defendant's present counsel, was appointed to represent him in any further proceedings.

A second trial commencing on February 18, 1975, culminated in a verdict of guilty on all counts on February 20, 1975. This appeal followed.

Defendant specifies thirteen points of error on appeal. He first claims error in the trial court's denial of his motion to depose prospective witnesses. On August 15, 1974, one day after defendant's arraignment and several months prior to the first trial, defendant's counsel filed a motion to take depositions of witnesses for the defendant. The trial court's docket sheet discloses that the motion was denied on September 18, 1974. Even though the motion was filed and ruled upon prior to defendant's first trial, he, nevertheless, now claims error in his appeal from the judgment rendered in his second trial. Defendant argues the summary denial of his motion constituted abuse of discretion.

The pretrial taking of depositions of prospective witnesses is governed by K. S. A. 22-3211 (1) which reads:

"(1) If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and

that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time after the filing of an information or indictment may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition. . . ."

In his motion defendant alleged that the address of the three witnesses in question was 2301 Brooklyn Street, Kansas City, Missouri, which apparently was the office address of Dr. M. M. Queen, a dentist. Defendant alleged that Dr. Queen "is of advanced years and *may* be unable to attend trial." Defendant did not state, nor does the record disclose, the age of Dr. Queen. Defendant also alleged that Mrs. Luella Walker and Mary Louise Baker, employees of Dr. Queen, "*may* be unable to attend trial" and that it was necessary to take the depositions of all three witnesses in order to prevent a failure of justice.

It appears that defendant's defense was based on alibi—that he was in Dr. Queen's dental office in Kansas City, Missouri on April 13, 1974, and, thus, the testimony sought was material. However, the allegations of his motion fall short of establishing necessity to perpetuate testimony as required by statute. In *State v. Hill*, 211 Kan. 287, 507 P. 2d 342, we considered the import of K. S. A. 62-1315, the predecessor of K. S. A. 22-3211, and stated:

"Our interpretation of K. S. A. 62-1315 is that the condition referred to in the statute is the need to perpetuate testimony and in the absence of a showing of such necessity the motion was properly denied. K. S. A. 1972 Supp. 22-3211, the section of the new criminal code which incorporates K. S. A. 62-1315, supports this interpretation by specially requiring a showing of a need to perpetuate testimony." (p. 295.)

K. S. A. 22-3211 follows Rule 15 of the Federal Rules of Criminal Procedure (Vol. 13 Vernon's Kansas Statutes Annotated, Code of Criminal Procedure [Spring-Ryan], Depositions, § 22-3211, pp. 74-76). In considering a motion filed under Rule 15 the United States Court of Appeals in *In Re United States*, (1st Cir. 1965), 348 F. 2d 624, held that a bare assertion that the witness might not be able to appear is not enough. (See, also, Vol. 1 Wright Federal Practice and Procedure [Criminal], Depositions, § 241, 473.)

The State of Missouri, like Kansas, has enacted the Uniform Act to Secure Attendance of Witnesses from without the State. This being the case the trial court was authorized under K. S. A. 22-4203 to compel attendance of a Missouri witness by subpoena. The defendant made no attempt before either of his two trials to invoke the remedy provided by 22-4203. We deem the trial court was

correct in finding that defendant had made an insufficient showing of necessity.

Actually, all three of the witnesses testified at one or the other of defendant's two trials. Dr. Queen testified at the first and both Luella Walker and Mary Louise Baker testified at the second.

Defendant also complains of the trial court's refusal to permit, at his second trial, the reading of Dr. Queen's testimony given at the first trial. As we have noted, the record shows that defendant had made no attempt to obtain the presence of Dr. Queen under the provisions of 22-4203. In fact, the record shows that defendant had not even contacted Dr. Queen concerning his appearance as a witness at the second trial. In ruling on defendant's request to read Dr. Queen's testimony, the trial court observed:

"In this case, it doesn't appear either your client or you had any direct contact with Dr. Queen, and if Dr. Queen had been served with a subpoena, pursuant to the Uniform Out of State Attendance of Witnesses Act, which we in Kansas and those people in Missouri observe, and then failed to honor it, I would have had no qualms about sending someone out to assist him. But you are a little tardy at this point in time to talk about using that testimony, based on this foundation. So, your request is denied."

Under the circumstances there is no abuse of discretion shown with respect to the trial court's rulings concerning the deposing of prospective witnesses or the reading of Dr. Queen's testimony.

Defendant contends the trial court erred in denying his motion for discharge because of the state's failure to bring defendant to trial within ninety days after arraignment pursuant to K. S. A. 22-3401 and 22-3402. As we have noted, defendant was arraigned on August 16, 1974. The record discloses that on November 11, 1974, shortly before the statutory ninety-day period expired, the administrative judge made a notation on the trial docket that the case was continued for thirty days due to lack of time because of pending trials. Permissible extensions of trial time are provided by K. S. A. 22-3402. The applicable provision is subsection (d) which reads:

"(d) Because of other cases pending for trial, the court does not have sufficient time to commence the trial of the case within the time fixed for trial by this section. Not more than one continuance of not more than thirty days may be ordered upon this ground."

The import of the statute is fully discussed in State v. Davis, 209 Kan. 225, 495 P. 2d 965, and the holding therein clearly indicates there is no merit in defendant's contention here. The defendant's complaint seems to be that the trial court should not have continued the case on its own initiative. Defendant fails to suggest

any statutory or case law requirement, and we know of none, that the court must hold a formal hearing before granting a subsection (*d*) continuance. The ultimate responsibility for management of the trial calendar is in the trial court. (*State v. Higby*, 210 Kan. 554, 502 P. 2d 740.) The trial court properly exercised its discretion in entering the continuance on November 11, 1974.

Defendant next contends the trial court erred in allowing the state to use the testimony of Betty Walker given at the first trial. Prior to the commencement of the second trial the state informed the court that it was unable to procure the attendance of Betty Walker and requested the court to conduct an inquiry to determine whether it would permit the state to make use of Betty's prior testimony pursuant to the provisions of K. S. A. 60-460 (*c*). A hearing was had in which Philip L. Sieve, assistant district attorney handling the case, and Joseph A. Horvat, an investigator for the district attorney, were examined and cross-examined at length. They each testified concerning conversations with Mrs. Walker and her doctor—a Dr. Pinetta of Shreveport, Louisiana. According to Mr. Sieve, Dr. Pinetta scheduled a special examination of Mrs. Walker to determine her ability to travel to Kansas City. Dr. Pinetta described Mrs. Walker as being in the late stages of pregnancy, with high blood pressure and other complications. He said she was in no shape to travel to Kansas City. Mrs. Walker's baby was due the last of March or first of April. Trial was scheduled to commence on February 18, 1975.

No objection was made to the testimony of Sieve and Horvat. At the conclusion of the hearing the trial court ruled in these words:

"I would direct counsel's attention to K. S. A. 60-460, which are the exceptions to the exclusion of hearsay evidence. And under this particular statute, Subsection c relates to testimony given as a witness in a former trial in the same action, and its admissibility. And it provides that it is admissible, provided that the adverse party—in this case, the defendant and his counsel—have the right to listen to this testimony on a face-to-face basis; had the right to, and did, in fact, cross-examine this particular witness. And it's rather obvious that this was done at the earlier trial which ended in a mistrial in front of Judge Miller, Division 3.

"Now, I am going to permit them to use her testimony as part of the State's case in chief, with this limitation—and I think this is the only fair way to approach the problem—whatever was admitted and permitted by Judge Miller in regards to Betty Walker's testimony on either direct or cross-examination and whatever exhibits, if any, that her prior testimony provided the foundation for their admission into evidence, we will have to restrict ourselves to those rulings and apply the same to this case."

After the ruling was announced the court inquired if defendant had any objection. The defendant responded as follows:

"Yes, Your Honor, I would like to, at this time, make a record as to my objection to using this testimony. I know you have already ruled, but, first of all, what you say is correct, Your Honor, that the defendant and his counsel, at the previous trial, did have an opportunity to cross-examine Mrs. Walker and that pursuant to K. S. A. 60-460 (c), this testimony may be proper.

"My objection is basically this, Your Honor, that I am conducting Mr. Steward's defense in this trial, and it does deprive me of certain aspects that I may have had otherwise. Although, because I think I did have some agreement with Mr. Sieve regarding that, I will pass that. But as to using the former testimony and your adopting carte blanche Judge Miller's rulings, I am not in favor of that personally. I just wonder if that is proper. In other words, you are actually superimposing another judge at a previous trial's ruling onto this trial that you are conducting Your Honor. And I haven't been damaged by it yet, but I just wanted to bring it up."

We are not informed as to the agreement between counsel which was referred to; but we take counsel's statement to indicate that his primary concern was with the treatment of evidentiary rulings at the first trial; and that he desired to reserve the right to challenge any portions of the testimony which he deemed inadmissible, rather than that the testimony was inadmissible under 60-460 (c). However, defendant in this appeal does not challenge any of the evidentiary rulings pertaining to Mrs. Walker's testimony at the first trial. Regardless of the nature of the objection lodged, defendant on appeal argues that there was an insufficient foundation established for the admission of Mrs. Walker's transcript testimony. Defendant cites *State v. Calvert,* 211 Kan. 174, 505 P. 2d 1110. In *Calvert* defendant's counsel informed the court that a defense witness had telephoned him that she would be unable to attend the trial because of her doctor's orders. After a hearing the Calvert court ruled that the witness's doctor should call the prosecutor and satisfy him concerning the condition of the witness. The doctor failed to call and, as a consequence, the prior testimony of the witness was not admitted. In the instant case, defendant argues that since the trial court required no "condition precedent" as was done in *Calvert,* the state failed to make a proper showing of the unavailability of Mrs. Walker. There is no statutory or case law rule that requires the establishment of a condition precedent in such a situation. The provisions of K. S. A. 60-460 (c) (2) permit testimony of a witness given at a former trial in the same action if it is shown that the witness is unavailable to testify personally. According to K. S. A. 60-459 (g) (3) "Unavailable as a witness" includes situations

where the witness is unable to be present or to testify because of "then existing physical or mental illness."

This court has considered the admissibility of the testimony of an absent witness given at a preliminary hearing or former trial on numerous occasions. It may be said that the controlling test of unavailability, established by our cases, is the so-called "reasonable diligence rule." (*State v. Calvert,* supra.) The rule is stated in *State v. Washington,* 206 Kan. 336, 479 P. 2d 833, as follows:

"Under the ·federal constitutional standard as applied to the states, the test of unavailability, for the purposes of the exception to the confrontation requirement, is whether the prosecutorial authorities have made a 'good faith effort' to obtain the witness's presence at trial (*Barber v. Page,* 390 U. S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318). Consistent with the federal mandate is our long-standing rule that before the state may use the testimony of an absent witness given at a former trial or preliminary hearing, it must be made to appear the witness cannot, by the exercise of reasonable diligence, be produced at trial (*State v. Lesco,* 194 Kan. 555, 400 P. 2d 695; *State v. Guthrie,* 192 Kan. 659, 391 P. 2d 95; *State v. Brown,* 181 Kan. 375, 312 P. 2d 832; *State v. Bonskowski,* 180 Kan. 726, 308 P. 2d 168; *State v. Streeter,* 173 Kan. 240, 245 P. 2d 1177. Also, see K. S. A. 60-459 [*g*])." (p. 338.)

See, also, *State v. Bey,* 217 Kan. 251, 535 P. 2d 881; *State v. Kirk,* 211 Kan. 165, 505 P. 2d 619; and *State v. Ford,* 210 Kan. 491, 502 P. 2d 786.

This court has not attempted to define the term "reasonable diligence" with the preciseness demonstrated in the definition of some other legal phrases. Analysis of our cases discloses that each case turns on its own particular facts and circumstances. In the instant case the conduct of the state (Sieve and Horvat) was thoroughly examined and considered by the trial court. There was no indication of bad faith on the part of the state and no question of lack of diligence in searching for a missing witness was raised such as in *State v. Kirk,* supra. The defendant did not ask for a continuance. No complaint was made concerning the cross-examination of Mrs. Walker at the first trial. From its ruling it is evident the trial court was satisfied that Mrs. Walker was unavailable and that the state acted in good faith. The general rule relating to proof in·such cases is stated in 31A C. J. S., Evidence, § 391, pp. 963-964:

"The preliminary proof should be full and convincing, and the inability of the witness to appear must be established by a ruling of the court or by agreement of counsel. The sufficiency of such proof is primarily a question for the trial court and is largely within its discretion, which will not be interfered with unless an abuse of discretion is shown. . . ."

Our research has disclosed two criminal cases in which prior trial testimony of a witness was admitted where the witness was unable to attend the second trial due to pregnancy. The issue was presented on appeal after a retrial and conviction of second degree murder in *People v. Phillips,* 270 C. A. 2d 381; 75 Cal. Rptr. 720. The appellate court found that the reading of the first trial testimony of a witness, who was out of the jurisdiction and in an advanced stage of pregnancy, was not erroneous where the foundation presented to the trial court satisfied statutory and constitutional requirements. While not the principal ground for reversal, the court in *Peterson v. United States,* (5th Cir. 1965), 344 F. 2d 419, found the reading of prior trial testimony of a witness, absent because of pregnancy, was erroneous since a continuance could have been granted.

Our statute (60-459) (g) defining unavailability requires only that illness be presently existing. Since defendant had the opportunity, and apparently did cross-examine Betty Walker on all issues of the case at the first trial, it appears that statutory and constitutional requirements were met. The state's evidence clearly shows good faith and that unavailability was not planned in order to gain an advantage. Under all the facts and circumstances shown by the record in the instant case, we cannot say the trial court abused its discretion in allowing the testimony of Mrs. Walker to be read.

Defendant next contends the trial court erred in admitting a portable Universal sewing machine into evidence. The sewing machine was one of the items taken from the Walker home on April 13, 1974. The sewing machine was found by the officers during a search of the Cadillac automobile driven by defendant at the time of his arrest on May 31, 1974. The defendant attacks the chain of custody while the police had possession of the sewing machine and says that finding it in an automobile belonging to someone else forty-five days after the crime was only circumstantial and too remote to be admissible; and that ownership of the machine was not sufficiently established. None of defendant's contentions concerning admission of the sewing machine are supported by the record.

The sewing machine was initialed by one of the officers who took it from the trunk of the automobile. Two officers were present when it was initialed and both testified. It was taken to police headquarters where it was marked, tagged and placed in the police

property room. The initials, marks and tags were on the machine and identified by officers at trial. Betty Walker positively identified the sewing machine as her own by its color; the fact that the needle had been broken; and that she had always had trouble adjusting the bobbin underneath the machine, which she indicated while on the witness stand. The testimony describing and identifying the sewing machine provides ample foundation for its admission and sufficient evidence to support the conclusion that the machine was taken from the Walker residence on April 13, 1974. Defendant's contentions in this regard are answered by our decision in *State v. Tillman*, 208 Kan. 954, 494 P. 2d 1178, wherein we said:

". . . The rule is that a party who offers an object into evidence must show that it is reasonably certain that there have been no material alterations of the object since it was first taken into custody. It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial court. It is not necessary that all possibility of its being tampered with should be excluded. (*State v. Cook*, 17 Kan. 392; *State v. Frideaux*, 207 Kan. 790, 487 P. 2d 541.) The ultimate question of the sufficiency of the proof is, of course, for the jury to determine. . . ." (pp. 958-959.)

Defendant contends the trial court erred in admitting evidence concerning the arrest of the defendant on another charge and in admitting evidence as to the fruits of the search of the automobile in which the defendant was an occupant at the time of his arrest. As a related point defendant contends the trial court erred in admitting testimony as to Marlowe King's identification and involvement with this case. Defendant points out that the arrest of King, Haygood and himself on May 31, 1974, was made pursuant to investigations of an unrelated crime and that at the time of the arrest the charges involved in this appeal had not been lodged against him. He argues that these facts, when coupled with the considerable period of time between the commission of the crimes and the arrest, render the seized property too remote to be helpful.

The fact that the automobile defendant was driving when arrested belonged to another person affects only the degree of control or custody he and King exercised over the contents of the trunk and, thus, affects only the weight to be given the exhibits and not their admissibility. Nonownership of the automobile does not destroy the relevancy of the evidence, nor would the lapse of a few weeks have had such an effect. By the language of K. S. A. 1975 Supp.

60-401 (*b*), relevant evidence is defined as "evidence having any tendency in reason to prove any material fact." (See, also, *State v. Brown*, 217 Kan. 595, 538 P. 2d 631.) The circumstances surrounding the arrest of defendant, Marlowe King and Michael Haygood, showing them to have been the occupants of the car containing the sewing machine allegedly stolen from the Walker home, were obviously helpful to the state's case and clearly relevant to establishing defendant's connection with the crimes. This court in *State v. Martin*, 206 Kan. 388, 480 P. 2d 50, stated:

". . . As a general rule, physical objects connected with, or which serve to unfold or explain a criminal act are admissible. The weight and value of such evidence, however, is a matter for assessment by the jury. (*State v. Joseph Little*, 201 Kan. 101, 439 P. 2d 383; *State v. Hill*, 193 Kan. 512, 394 P. 2d 106.)" (p. 389.)

No error is shown in the admission of the evidence in question.

Defendant contends the trial court erred in admitting a number of photographs depicting the body of Billy Walker and various rooms and scenes in the Walker residence. Defendant strenuously argues that the admission of Exhibit 6, a photograph of the corpse on the autopsy table, was prejudicial to his rights. On the other hand, the state justifies its admission to prove premeditation, contending the lack of blood around the neck wound tends to show that the fatal shotgun wound to the back occurred first, leaving the inference that the neck wound was inflicted to insure the victim's demise. Dr. Sereres, the coroner, used the photographs in describing the extent and nature of the neck wound and to support his theory that the neck wound was inflicted after the shotgun wound. This court has repeatedly held that the admission of photographs of a decedent, including photographs taken during an autopsy is not error when they are relevant to matters in issue such as the cause and manner of death and aid the understanding of a pathologist's testimony. In *State v. Campbell*, 210 Kan. 265, 500 P. 2d 21, we said:

"Even where the defendant concedes the victim's death and the cause of death, it is incumbent upon the prosecution to prove as a part of its case in chief all elements of the crime charged; and photographs to prove the elements of the crime, including the fact and manner of death, and the violent nature of the death, and to corroborate the testimony of other witnesses, are relevant and admissible. (Citing cases.)" (p. 276.)

See, also, *State v. Randol*, 212 Kan. 461, 513 P. 2d 248; *State v. Martin*, 206 Kan. 388, 480 P. 2d 50; and *State v. Johnson*, 201 Kan. 126, 439 P. 2d 86.

Other photographs admitted in the trial of the case depict views of various rooms of the Walker residence following the crimes and show the position of the body, and some blood smears on the floor and walls. The state justifies the use of this evidence as being corroborative and explanatory of Betty's testimony describing how defendant and Marlowe King moved through the home on April 13, 1974, and how she got from the house to the back yard where she was later discovered. The photographs are relevant and of sufficient probative value as to outweigh prejudicial aspects thereof. None of them approached the degree of gruesomeness of the photographs found to be objectionable in State v. Boyd, 216 Kan. 373, 532 P. 2d 1064.

Defendant claims error in the admission of testimony as to Marlowe King's identification and involvement in the case. Defendant and King were charged jointly in one information. We are informed that on request they were tried separately. King's appeal from conviction in his separate trial is presently pending before this court. The state's evidence was that King actually fired the shot that killed Billy Walker; and that he participated in or assisted defendant in all of the acts constituting the crimes charged. Testimony as to King's acts and involvement were not only relevant, but crucial to much of the state's case. The acts of one codefendant in the presence of another, which have a legitimate bearing on the crime committed are admissible against such other. (22A C. J. S., Criminal Law, § 754, p. 1124; State v. Jerrel, 200 Kan. 415, 436 P. 2d 973; and State v. Hoerr, 88 Kan. 573, 129 Pac. 153.)

In points eight and twelve, defendant challenges the sufficiency of the state's evidence. He contends the trial court erred in overruling his motion for acquittal at the close of the state's evidence and again erred in denying his motion for a new trial notwithstanding the jury's verdict. Defendant says the state's evidence consisted only of Betty Walker's identification of defendant, supported by discovery of the sewing machine in an automobile driven by defendant a month after the crimes were committed. While the recovery of the sewing machine at the time of defendant's arrest was circumstantial evidence, it was admissible on proper identification by Betty Walker and the weight to be given it was a matter for the jury. The state's case is not weakened merely because it was partly based on circumstantial evidence. It is a well-established rule in this jurisdiction that a conviction of even the gravest offense may be sustained by circumstantial evidence. (State v. Morton, 217

Kan. 642, 538 P. 2d 675; and *State v. Ritson*, 215 Kan. 742, 529 P. 2d 90.) It is evident, of course, that the jury believed the testimony of Betty Walker and rejected the testimony of defendant's alibi witnesses. A close examination of the record makes the jury's choice understandable. Defendant's principal alibi witness was Mary Baker, an employee of Dr. Queen. On direct examination she testified that defendant was in Dr. Queen's office on April 13, 1974, although, she did not fix a specific time. However, the record of her cross-examination tends to show that on June 30, 1974, she had given a statement to police officers which was contradictory to her testimony at trial. She was also cross-examined about being related to defendant. Her testimony on cross-examination might well have damaged her credibility in the eyes of the jury.

We are satisfied the state made out a submissible case and that the evidence was sufficient to support the jury's verdict. On appellate review of criminal convictions the test is not whether guilt was established beyond a reasonable doubt, which was the question before the jury, but whether there was a basis in the evidence for a reasonable inference of guilt. (*State v. Norwood*, 217 Kan. 150, 535 P. 2d 996; and *State v. Ritson*, supra.)

Defendant asserts error in the trial court's refusal to submit his requested instruction concerning alibi. The trial court submitted its own instruction on alibi, which is not reproduced in the record. However, the discussion on instructions between court and counsel, which is reproduced, indicates that the instruction given fully informed the jury on the subject and was similar to that approved by this court in *State v. Murray*, 210 Kan. 748, 504 P. 2d 247.

Defendant also complains of the trial court's overruling of his objections to instructions Nos. 1, 7 and 17. Instruction No. 1 sets out the charges, the defendant's plea of not guilty, and explained the posture of the case. Defendant complains of a reference, in the instruction, to Marlowe King which reads:

". . . Marlowe King is charged as a codefendant in the Information filed by the State, but the Court for legal reasons has granted him a separate trial; and only Eugene Steward is being tried at this time. . . ."

Marlowe King was charged as a codefendant in the information. It was necessary to explain his position in order to give the jury understanding of the case and the issues to be tried. We see nothing prejudicial in the instruction.

Instruction No. 7 defined sexual intercourse in connection with the rape charge. It is a verbatim statement of PIK [Criminal]

§ 57.02 and conforms with K. S. A. 21-3501 (1). It is a correct statement of the law. (*State v. Ragland,* 173 Kan. 265, 246 P. 2d 276.)

Instruction No. 17 is in the form of a so-called "Deadlocked Jury" instruction. While not verbatim it closely follows PIK [Civil] § 10.20, which we approved in *State v. Scruggs,* 206 Kan. 423, 479 P. 2d 886, when given before the jury commenced deliberations. We find no reversible error in the giving of the instruction. However, we believe the better practice in criminal cases is to give PIK [Criminal] § 68.12 along with other instructions before the case is submitted.

We find no reversible error shown by any contentions made concerning the court's instructions.

Finally, defendant claims the trial court abused its discretion in applying the Habitual Criminal Act (K. S. A. 21-4504), in imposing sentence. Defendant says that in light of the previous sentences imposed on defendant in case number 2086-CR (which apparently was the case involving the unrelated crimes for which defendant was arrested) the imposition of enhanced consecutive sentences for convictions in the instant case constituted cruel and unusual punishment and an abuse of discretion. The sentences imposed were severe, but the crimes committed were heinous and cold-blooded. Defendant makes no point that the sentences exceeded permissible limits under 21-4504 and the statutory sentences for each crime. In *State v. Pettay,* 216 Kan. 555, 532 P. 2d 1289, we held:

"When a sentence is fixed by the trial court within permissible limits of the applicable statutes the sentence is not erroneous. In the absence of special circumstances showing an abuse of judicial discretion it cannot be determined on appeal that such a sentence is excessive or so disproportionate to the offense as to constitute cruel and unusual punishment." (Syl. ¶ 4.)

The sentences imposed are not so disproportionate to the heinous offenses committed as to constitute cruel and unusual punishment.

Defendant's industrious counsel has briefed thirteen points of error which we have carefully examined, but find no error shown which warrants a new trial.

The judgment is affirmed.