No. 48,331

STATE OF KANSAS, *Appellee*, v. GARY K. ALDERDICE, *Appellant*.

(561 P. 2d 845)

Opinion filed March 5, 1977.

*Ivan O. Poe*, of Wichita, argued the cause and was on the brief for the appellant.

*Stephen E. Robison*, assistant district attorney, argued the cause, and *Curt T. Schneider*, attorney general, *Vern Miller*, district attorney, and *Christoper Randall*, assistant district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: This is a direct appeal by the defendant, Gary K. Alderdice, from his conviction of aggravated robbery in violation of K. S. A. 21-3427, a class B felony. He was sentenced to be imprisoned for not less than ten years nor more than life, pursuant to K. S. A. 21-4501 (*b*).

He contends that the trial court erred in receiving into evidence the preliminary hearing transcript of the testimony of John Purdy; in its rulings on the admissibility of exhibits; in its jury instructions; and in denying probation without conducting a further hearing.

In the early morning hours of October 19, 1974, the defendant drove to a supermarket in Wichita. He was accompanied by Betty Jo Purdy, her sixteen-year-old daughter, Billie Jo, and her fourteen-year-old son, John. Mrs. Purdy and her daughter entered the market, leaving defendant and John in the car. Defendant showed John a hand gun, a blackjack, and a pair of handcuffs.

Shortly after Mrs. Purdy and her daughter returned to the car,

Jay Van Price came out of the market with a bag of groceries and proceeded to his car, which was parked nearby. As Price drove home, Alderdice followed. When Price pulled into his driveway, the defendant drove on by, turned the corner, and parked out of Price's sight. The defendant jumped out of the car and told John to come along. As Price was locking his car door the defendant appeared with a gun, told Price not to move, and demanded his car keys. Price handed over the keys, and Alderdice hit him over the head with a blackjack, knocking him unconscious. While Price lay on the ground, Alderdice removed his wallet. Alderdice then unlocked the trunk on Price's car and ordered him to get in. Price, bleeding heavily from the wound on his head, climbed into the trunk. Alderdice threw Price's bag of groceries on top of him and closed the trunk lid. Alderdice and John then returned to Alderdice's car and drove to the Purdy residence, where Alderdice directed Billy Jo and John to burn Price's wallet, containing his birth certificate and his driver's license bearing his photograph.

Meanwhile, Price escaped from the trunk by kicking his way through the back seat. He went to a hospital, where fifteen stitches were required to close his head wounds.

John Purdy and Price both testified at the preliminary hearing. Alderdice was seated in the spectator section of the courtroom, accompanied by six other men, all of whom were about the same height and all of whom wore glasses. Nevertheless, both Purdy and Price identified the defendant. Price stated that the defendant had the end of one finger missing, and he described Alderdice's vehicle, a powder blue Ford with a white roof and a red trunk lid.

At trial, defendant was identified by Price, and by Mrs. Purdy and her daughter. The transcript of the testimony of John Purdy at the preliminary examination was admitted upon trial, and gives rise to the principal claim of error. Defendant contends that John Purdy was not "unavailable" as a witness at the trial, and thus it was error to receive the transcript in evidence.

John was subpoenaed by the state, and appeared and testified at the preliminary examination. During the week prior to trial the state issued a subpoena for him. This was left with his mother. Mrs. Purdy testified that she did not see John between the time the subpoena was served and the time of trial. Though John was technically in her custody, he sometimes stayed with her, sometimes with his father, and sometimes with his grandparents. She talked with him by telephone on Saturday morning and advised

him of the subpoena, but she did not believe that he would appear so she called the sheriff's office and gave them this information. A detective was dispatched to find John, and he spent several hours attempting to do so on Sunday. Trial commenced on Monday morning. During trial the state carefully questioned Mrs. Purdy and her daughter as to the whereabouts of John, and dispatched several officers who were unable to locate him. The trial court heard the testimony of the various officers who participated in the unsuccessful search, and at the conclusion of that testimony admitted the transcript of John's testimony at the preliminary examination. Defendant contends this was error.

K. S. A. 60-460 (c) states an exception to the hearsay rule as follows:

"Subject to the same limitations and objections as though the declarant were testifying in person . . . (2) if the judge finds that the declarant is unavailable as a witness at the hearing, testimony given as a witness in . . . a preliminary hearing . . . when . . . the issue is such that the adverse party on the former occasion had the right and opportunity for cross-examination with an interest and motive similar to that which the adverse party has in the action in which the testimony is offered, but the provisions of this subsection . . . shall not apply in criminal actions if it denies to the accused the right to meet the witness face to face;"

K. S. A. 60-459 is also germane. It provides in applicable part that:

"As used in K. S. A. 60-460, its exceptions and in this section:

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(g) 'Unavailable as a witness' includes situations where the witness is . . . (5) absent from the place of hearing because the proponent of his or her statement does not know and with diligence has been unable to ascertain his or her whereabouts.

"But a witness is not unavailable (1) if the judge finds that his . . . absence is due to . . . the culpable neglect of such party . . ."

We discussed both statutes at length in *State v. Steward,* 219 Kan. 256, 262-265, 547 P. 2d 773. At page 264, we said:

".  .  . It may be said that the controlling test of unavailability, established by our cases, is the so-called 'reasonable diligence rule.' . . . The rule is stated in *State v. Washington,* 206 Kan. 336, 479 P. 2d 833, as follows:

" 'Under the federal constitutional standard as applied to the states, the test of unavailability, for the purposes of the exception to the confrontation requirement, is whether the prosecutorial authorities have made a "good faith effort" to obtain the witness's presence at trial (*Barber v. Page,* 390 U. S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318). Consistent with the federal mandate is our long-standing rule that before the state may use the testimony of an absent witness given at a former trial or preliminary hearing, it must be made

to appear the witness cannot, by the exercise of reasonable diligence, be produced at trial (*State v. Lesco,* 194 Kan. 555, 400 P. 2d 695; *State v. Guthrie,* 192 Kan. 659, 391 P. 2d 95; *State v. Brown,* 181 Kan. 375, 312 P. 2d 832; *State v. Bonskowski,* 180 Kan. 726, 308 P. 2d 168; *State v. Streeter,* 173 Kan. 240, 245 P. 2d 1177. Also, see K. S. A. 60-459 [g]).' (p. 338.)

"See, also, *State v. Bey,* 217 Kan. 251, 535 P. 2d 881; *State v. Kirk,* 211 Kan. 165, 505 P. 2d 619; and *State v. Ford,* 210 Kan. 491, 502 P. 2d 786.

"This court has not attempted to define the term 'reasonable diligence' with the preciseness demonstrated in the definition of some other legal phrases. Analysis of our cases discloses that each case turns on its own particular facts and circumstances. . . ."

In the case at hand, the state had no reason to suspect that John Purdy would not appear for trial until the Saturday before trial was to commence. The trial court was satisfied, upon a full evidentiary hearing, that the state exercised due and reasonable diligence in order to locate him, but was unable to do so. The record amply supports this finding. The trial court did not abuse its discretion in finding that John Purdy was "unavailable."

The defendant also contends that he was denied the right of confrontation at trial by the admission of the preliminary hearing transcript of the testimony of John Purdy. Purdy was cross-examined extensively at the preliminary hearing by the same counsel who represented the defendant at trial. We have long held that preliminary hearing transcripts may be admitted upon trial under similar circumstances, and that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement. *State v. Terry,* 202 Kan. 599, 602, 451 P. 2d 211, and cases therein cited.

Our present statute, K. S. A. 60-460 (*c*), merely reiterates the rule which we have followed for many years. Defendant was here granted full right of confrontation and cross-examination. We find no error.

Defendant next contends that the trial court erred in disposing of his motion for probation without granting an evidentiary hearing. An application for probation was made orally at the time of sentencing. The trial court proceeded to sentence the defendant, and indicated that it would consider the matter of probation further upon receipt of a report from the Kansas Reception and Diagnostic Center. The court ordered that the defendant be taken to the center, not for the purpose of a pre-sentence report, but as a part of his sentence.

On September 2, upon being advised that a report from the center had been received, defendant's counsel filed a formal written

motion for probation, and requested oral argument. On the same date the court considered the application for probation. Its order states:

"After noting the violence involved 'in the present case, the report of the diagnostic center, and that the defendant is not a first-offender, said motion and oral argument thereon is . . . denied. . . ."

In *State v. Benson*, 207 Kan. 453, 485 P. 2d 1266, Justice Fromme, speaking for the court, said:

"The granting of probation is exlusively a function of the trial court and we hold a decision of the trial court denying probation is not subject to review by an appellate court." (p. 458.)

Here the court initially heard an oral motion for probation, deferred action until a report was received from the reception and diagnostic center, then reviewed the matter and denied probation. The court was not required to hold an additional hearing. We find no abuse of discretion and no error.

We turn next to defendant's contention that two exhibits were not shown to be in the same condition they were in at the time of the *commission of the offense*, and that they were therefore inadmissible. Our rule does not require such a showing. As we said in *State v. Beard*, 220 Kan. 580, 584, 552 P. 2d 900, quoting from *State v. Tillman*, 208 Kan. 954, 494 P. 2d 1178:

" ' " . . . The rule is that a party who offers an object into evidence must show that it is reasonably certain that there have been no material alterations of the object since it was *first taken into custody*. It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial court. It is not necessary that all possibility of its being tampered with should be excluded. (*State v. Cook*, 17 Kan. 392; *State v. Frideaux*, 207 Kan. 790, 487 P. 2d 541.) The ultimate question of the sufficiency of the proof is, of course, for the jury to determine. . . ." (pp. 958-959.)' " (Emphasis supplied.)

The exhibits here were acquired by a detective two days after the robbery. He identified them by his initials and the date which he had placed thereon when he took possession of them, and he testified that they were in substantially the same condition at the time of trial as they were when he received them. Under our rule this was adequate.

Defendant testified that while he was operating a metal shear in the course of his employment on September 2, 1974, he mashed the little finger on his right hand. He was taken to the hospital

and the tip of that finger was amputated. He remained under the care of his physician until October 21, two days after Van Price was robbed. Defendant said that he went to see his physician on October 10. He offered in evidence two documents which he received as a result of that office call. Exhibit 7 is a bill for $5 for the office call; exhibit 6 is a handwritten note from the physcian, dated October 10, stating that Alderdice should not return to work for two weeks because his finger was still tender and moderately swollen. The trial court refused to admit these exhibits, holding that they were not relevant. Defendant contends this was error.

In *State v. Baker*, 219 Kan. 854, 549 P. 2d 911, We said:

". . . '[R]elevancy [is] a matter of logic and experience and not of law. . . . If an item of evidence tends to prove or disprove a proposition, it is relevant to that proposition. . . .' Slough, Relevancy Unraveled, 5 Kan. L. Rev. 1 (1956). The standard of relevancy is whether the evidence offered renders the desired inference more probable than it would be without the evidence. 1 Jones on Evidence § 4:1 (6th ed. 1972)."

The definitions in K. S. A. 60-401 (*a*) and (*b*) are germane. They read:

"(*a*) 'Evidence' is the means from which inferences may be drawn as a basis of proof in duly constituted judicial or fact-finding tribunals, and includes testimony in the form of opinion, and hearsay.

"(*b*) 'Relevant evidence' means evidence having any tendency in reason to prove any material fact."

Defendant argues that the exhibits were relevant to show that he had knowledge of the condition of his finger some nine days prior to the robbery, and that such knowledge is thus relevant to his decision-making process on the date of the robbery. He reasons that his little finger was tender and swollen, and the fact that the doctor told him of its condition and told him not to return to work would have deterred him from deciding to commit an aggravated robbery. He admitted, however, that on the date of the robbery the condition of his finger did not keep him from playing pool, playing foosball, or driving his car.

The proffered evidence was, at most, tangential. It was collateral only to the fact in issue and its probative value insignificant. We conclude that the trial judge did not abuse his discretion in refusing to admit the proffered exhibits.

Lastly the defendant contends that it was error for the court to give the jury instruction No. 4, an almost verbatim rendition of PIK Criminal 68.12, relating to jury deliberation. This instruction was included and given at the time of the original charge to the

jury. The instruction was discussed and approved in *State v. Oswald*, 197 Kan. 251, 260, 417 P. 2d 261. That opinion was cited with approval as recently as *State v. James*, 217 Kan. 96, 101, 535 P. 2d 991. Under the circumstances of this case we find no instructional error.

The judgment is affirmed.