## THE STATE OF KANSAS v. HENRIETTA COOK.

1. EVIDENCE; *Analysis, Showing Poison; Trial for Murder.* In a criminal prosecution for murder in the first degree, where it is claimed that the deceased came to his death by poison, and that a chemical analysis of his stomach subsequently made tends to show the same, *held,* that where sufficient evidence is introduced on the trial to prove beyond a reasonable doubt that the stomach analyzed was the stomach of the deceased, and that it had not been improperly tampered with, the evidence concerning the analysis may itself be considered by the jury. It is not necessary in such a case that the stomach should be kept continuously under lock-and-key, or continuously sealed up. The court itself should first pass upon the preliminary proof, and if the court should hold the same to be sufficient, then the question of its sufficiency should also be passed upon by the jury, under proper instructions from the court.

2. EXPERT; EVIDENCE; *Chemist; Effect of Poison.* A person who is a chemist and toxicologist may testify as an expert concerning the effect of a certain poison upon the human system, although he may not be a physician, or surgeon.

### *Appeal from Osborne District Court.*

INDICTMENT, charging defendant *Henrietta Cook* with having poisoned and killed Hiram Cook, by mixing strychnine in his food and drink, and so administering it, on the 3d of March 1876. Trial at the April Term 1876. Defendant asked twelve instructions, of which the 4th, 9th, 11th and 12th were refused. The 4th was in regard to "reasonable doubt," and was in substance included in the general charge. The 9th and 11th instructions so refused are as follows:

"9th. The identity of the substance (in this case the stomach of the deceased) submitted to chemical analysis

must be preserved. And the main question to be settled on this point is, are they the same substances? Have they at all times been preserved under lock-and-key? If transported from place to place, have they been carefully sealed? Under all these circumstances the evidence should be such as to preclude the possibility of their having been tampered with."

"11th. The penalty or punishment for every murder which shall be committed by means of poison, purposely, deliberately, premeditatedly, and of malice aforethought administered or given, is death. An offense of such character is murder in the first degree; and the indictment charges such offense. And if from all the evidence the jury cannot find the defendant guilty of said offense as charged, (that is, murder in the first degree,) then they cannot convict in this case, and the verdict must be, not guilty."

The 12th instruction asked and refused, is in the exact words of the 9th, except the last clause, which clause is as follows: "Under all these circumstances the evidence should be such as to preclude beyond a reasonable doubt the probability of their having been tampered with." The prosecution asked several instructions, all of which were given. The 5th instruction so given was as follows:

"5th. Every person deliberately assisting another in the commission of self-murder, is guilty of manslaughter in the first degree; and therefore, if the jury believe from the evidence in this case, that the defendant Henrietta Cook, at any time administered strychnia or strychnine to the deceased Hiram Cook, in quantity sufficient to produce death, and that she knew at the time she administered the same that the same was a deadly poison, and that the quantity was sufficient to produce death, and that said Hiram Cook requested the defendant to administer said poison, then you must find the defendant guilty of manslaughter in the first degree."

The jury returned a verdict of "guilty of murder in the first degree, as charged in the information." New trial refused, and judgment on the verdict. Defendant appeals. No briefs on file.

*A. Saxey*, and *Z. T. Walrond*, for appellant.

*R. G. Hays*, county-attorney, for The State.

26—17 KAS.

The opinion of the court was delivered by

VALENTINE, J.: The defendant in this case was charged with murdering her husband, by poisoning him. She was found guilty of murder in the first degree, and sentenced to suffer death. She now appeals to this court. The record of the case is very voluminous, and shows in detail all the proceedings of the court below. We have examined the record carefully, and also considered carefully all the points made by the defendant's counsel, and we must now say that we do not think that the court below committed any material or substantial error. In answer to the points made by defendant's counsel we would say: First, we think the information was sufficient. Second, the "confession" made by the defendant was beyond all doubt voluntary.

III. The evidence introduced on the trial shows, as we think, beyond all reasonable doubt, that the stomach which was taken from the body of the deceased was the identical stomach which was analyzed by Professor Kedzie, and that no foreign substance such as strychnine or other poison could have been introduced into the stomach, or into its contents, subsequent to the death of the deceased and prior to the analysis of said stomach and its contents. This we think was all that was necessary for the purpose of allowing the jury to consider the evidence concerning the analysis. It was not necessary that the stomach should have been kept continuously under lock-and-key from the time it was taken from the body of the deceased until the final analysis, or that it should have been kept continuously sealed up. The preliminary proof of the identity of the stomach and its contents, and that the same had not been improperly tampered with, was first submitted to the court, and passed upon by the court; and the court decided that the proof was sufficient. This we think was correct. But even if the court had erred, at the time, as to the sufficiency of the proof, still, if at the close of the trial, the proof was sufficient, the error would be immaterial. At the close of the trial the question

as to the sufficiency of said proof was again brought under review. At this time it was submitted to the jury for their consideration, under proper instructions from the court. This was also correct. Generally the decision of the court that the preliminary proof is sufficient, is only provisional, and the question of its sufficiency must also and at the close of the trial be passed upon by the jury. The jury found against the defendant upon this, and all other questions submitted to it. This we think was correct according to the evidence.

IV. Professor Kedzie, who made the analysis of the stomach and its contents, was a chemist and toxicologist, but not a physician, or surgeon. He was allowed to testify as an expert concerning the effect of strychnine upon the human stomach and upon the human system. This we think was right. The effect of poisons upon the human system we think comes within the scope of the science of toxicology.

V. The substance of the fourth instruction asked for by the defendant and refused by the court was embodied in other instructions given. The ninth and twelfth instructions asked for by the defendant, and refused by the court, were properly refused. As we have before said, it was not necessary that said stomach should have been kept continuously under lock-and-key, etc. And it was not necessary that all *possibility* of it being tampered with should have been excluded. The court gave proper instructions upon this subject, and all that the defendant was entitled to have given. Assuming for the purposes of this case, that the eleventh instruction asked for by the defendant and refused by the court was good law, and that the fifth instruction given by the court was not good law, and still the refusal of the one and the giving of the other could not, as we think, have prejudiced the defendant's rights in the slightest degree whatever. The instruction refused was, in effect, that the punishment for murder in the first degree is death, and that the jury should either find the defendant guilty of murder in the first degree, or acquit her.

The instruction given was, that the jury might under certain circumstances find the defendant guilty of manslaughter in the first degree. Now the jury has nothing to do with the punishment for the offense, in any case; and they found in this case that the defendant was guilty of murder in the first degree. The instruction with reference to manslaughter therefore had nothing to do with their verdict.

VI. The evidence does support the verdict; but as it is so voluminous (making over 200 pages of record,) we suppose it will hardly be expected that we shall comment upon the same in detail. There was some conflict in the evidence, however, but this court does not weigh conflicting evidence for the purpose of reversing judgments on the merits where there is sufficient evidence to uphold the verdict. We are inclined however to think that the verdict of the jury was correct, notwithstanding the conflict in the evidence.

The judgment of the court below must be affirmed.

All the Justices concurring.