No. 46,526

STATE OF KANSAS, *Appellee,* v. EARNEST TILLMAN, *Appellant,* and STATE OF KANSAS, *Appellee,* v. WILLIS P. TYUS, *Appellant.*

(494 P. 2d 1178)

Opinion filed March 4, 1972.

*George E. Mallon,* of Kansas City, argued the cause and was on the brief for appellant Tillman.

*Robert L. Lundblad,* of Kansas City, argued the cause and was on the brief for appellant Tyus.

*Nick Tomasic,* Assistant County Attorney, argued the cause and *Vern Miller,* Attorney General and *Francis D. Menghini,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is an appeal from a judgment of the district court of Wyandotte County, in which the appellants, Willis P. Tyus and Earnest Tillman were convicted of aggravated robbery. The

appellants were convicted after trial by jury and each was sentenced to a term of imprisonment of not less than 30 years nor more than life.

It is clear from the record that a robbery took place. The disputed issue in the case was the identity of the appellants as the robbers. On July 31, 1970, at about 8:30 a. m. three men robbed a liquor store in Kansas City, Kansas. The proprietor of the store, C. L. Davis, was robbed of several thousand dollars by three men who were armed with guns. The victim was assaulted and handcuffed. Immediately after the robbers left the store C. L. Davis ran into the street yelling, "Stop those gentlemen; I've just been robbed." The robbers were observed by Ramon Rabon and by Craig (Moon) Davis, whose attention was called to the robbers by the shouts of C. L. Davis. Rabon observed the robbers enter a pea-green Ford and when they left the scene he followed them in his car across the Lewis and Clark viaduct into Kansas City, Missouri. Before undertaking the pursuit Rabon directed his wife to notify the police that he was following the getaway car. The three robbers abandoned the car in Kansas City, Missouri, and Rabon immediately notified both the Kansas City, Kansas, and Kansas City, Missouri, police by telephone.

Meanwhile the Kansas City, Kansas, police had gone to the scene of the robbery where they picked up Craig (Moon) Davis, the other eyewitness. On receiving Rabon's message they proceeded to the place where the car had been abandoned by the robbers. By the time they got there the Missouri police had already checked out the license number of the getaway car and found it to be a rental car owned by Southtown Motors in Kansas City, Missouri. The getaway car had been rented to a Charles Gratten. The Kansas police officers went first to Gratten's address "on a stake out" where they remained 15 or 20 minutes. They were then advised to go to Southtown Motors where the two men who had previously rented the car had been observed. There Craig (Moon) Davis identified the two appellants as the robbers. The Kansas police officers, Major Shannon and Detective Taylor, took the two appellants into custody and awaited the arrival of the Missouri police, who rearrested appellants, Tyus and Tillman, after being told the facts. Tillman was searched at Southtown Motors and the search disclosed the sum of $1273.13 on his person. Appellants were then taken to the Kansas City, Missouri, police station where money was observed falling

out of Tyus' clothing. He was then thoroughly searched and $1269.01 was discovered on his person. It is undisputed that appellants were advised of their rights by the reading of the *Miranda* warning and they made no statement. A lineup was held at the Kansas City, Missouri, police station and the two appellants were further identified. They were then taken on the same day before Magistrate Judge Louis J. Mazuch of Kansas City, Missouri. Both of the appellants signed a Waiver of Extradition and consented to being returned to Kansas City, Kansas. The appellants were identified as the robbers, by the victim, C. L. Davis, by Ramon Rabon and by Craig (Moon) Davis, all of whom observed the robbers at the scene of the robbery. The appellant, Tyus was also identified by James R. Cave, an employee at Southtown Motors, as being present at Southtown Motors at the time the pea-green Ford was rented on July 28, 1970.

As their first point on this appeal both appellants contend that the court erred in receiving into evidence the money which was discovered on the person of each appellant for the reason that in each case the money was obtained by an unlawful search and seizure in that no arrest warrant had been issued and no lawful arrest had been made. In its essence the contention is that the Kansas City, Kansas, police officers, Major Shannon and Detective Taylor, had no right to arrest appellants in the State of Missouri. It is urged that the arrests were illegal, hence the search incidental to each arrest was illegal and therefore the money which was obtained from the search was not admissible into evidence. The appellants recognize the fact that both Missouri and Kansas have enacted the Uniform Law on Fresh Pursuit. The Missouri statute 544.155 reads as follows:

"1. Any member of a duly organized state, county, or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest him on the ground that he is believed to have committed a felony in such other state, shall have the same authority to arrest and hold such person in custody, as has any member of any duly organized state, county, or municipal peace unit of this state, to arrest and hold in custody a person on the ground that he is believed to have committed a felony in this state; provided, the rights extended by this subsection shall be extended only to those states granting these same rights to peace officers of this state who may be in fresh pursuit of suspected criminals in such reciprocating states.

"2. If an arrest is made in this state by an officer of another state in accordance with the provisions of subsection 1 he shall, without unnecessary delay,

take the person arrested before a magistrate of the county in which the arrest was made, who shall conduct a hearing for the purpose of determining the lawfulness of the arrest. If the magistrate determines that the arrest was lawful he shall commit the person arrested to wait for a reasonable time the issuance of an extradition warrant by the governor of this state, or admit him to bail for such purpose. If the magistrate determines that the arrest was unlawful he shall discharge the person arrested.

"3. Subsection 1 shall not be construed so as to make unlawful any arrest in this state which would otherwise be lawful.

"4. For the purpose of this section, the word 'state' includes the District of Columbia.

"5. The term 'fresh pursuit', as used in this section, includes fresh pursuit as defined by the common law, and also the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall also include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. Fresh pursuit, as used therein, shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.

"6. This section may be cited as the 'Uniform Law on Fresh Pursuit'". (pp. 3974, 3975.)

The Kansas statute with essentially similar provisions is K. S. A. 1971 Supp. 22-2404. The Missouri statute in substance provides that a Kansas police officer who enters the State of Missouri in fresh pursuit of an escaping felon has the same authority to arrest and hold such person in custody as would any Missouri police officer. The Kansas officer is required without unreasonable delay to take the person arrested before a Missouri magistrate of the county in which the arrest was made. The magistrate is required to conduct a hearing to determine the lawfulness of the arrest. It should be noted that the term "fresh pursuit" is defined in the last sentence of paragraph 5 of the law as follows:

"Fresh pursuit, as used therein, shall not necessarily imply instant pursuit, but pursuit without unreasonable delay."

The issue presented on this point is whether or not the Kansas police officers who arrested appellants were in "fresh pursuit" of the appellants at the time the arrest was made.

We have no hesitancy in holding that the circumstances established in this case clearly show a "fresh pursuit" within the meaning of the Missouri statute. In *White v. State*, 70 Miss. 253, 11 So. 632, a burglary was committed during the night and was discovered the following morning. A police officer immediately after discovering the burglary followed and overtook and arrested the

escaping felon. The Supreme Court of Mississippi held that the pursuit was a "fresh pursuit" under the Mississippi statute.

A case quite similar to the case at bar is *People v. Pool,* 27 Cal. 572, where a syllabus states as follows:

"If, after the commission of a felony, the guilty parties flee to avoid an arrest, and within three or four hours are pursued by officers for the purpose of apprehending them, and the officers by diligent pursuit overtake them at a distance of twelve miles from the place where the crime was committed, this is an immediate or fresh pursuit of the criminals." (p. 573.)

In the case at bar the robbers fled from the scene of the robbery in Kansas City, Kansas, to Kansas City, Missouri, where they were apprehended 90 minutes later. The pursuit was continuous, uninterrupted and without unreasonable delay. It was a "fresh pursuit"; hence the arrest of the appellants by the Kansas police officers in Missouri was a valid arrest since the police had actual knowledge that the robbery had been committed and since the appellants were identified as the robbers by Craig (Moon) Davis prior to their arrest at Southtown Motors. Since the arrests were valid, the search of appellants which produced the money was incidental to a lawful arrest and therefore the search was lawful. The appellants were taken before a Missouri magistrate in Kansas City, Missouri, on the same day they were arrested and within a reasonable time. Both appellants voluntarily waived extradition and they were returned to the State of Kansas. The record establishes a full compliance with the requirements of the Missouri Uniform Law on Fresh Pursuit. Therefore the money discovered on the person of each defendant was admissible in evidence.

Appellants in their second point contend that it was error to receive into evidence the money seized from their persons, because the chain of custody from the time of seizure to the time of trial had been broken. We hold that this contention is without merit since there was established a complete chain of custody from the original receipt of the money by Missouri police officer Vestal until it was offered into evidence at the trial by Russ Wagner, the Kansas police property officer. There was some evidence that the large envelope containing the money had been opened for inspection but there was no evidence of tampering sufficient to justify exclusion of the money from evidence. The rule is that a party who offers an object into evidence must show that it is reasonably certain that there have been no material alterations of the object since it was

first taken into custody. It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial court. It is not necessary that all possibility of its being tampered with should be excluded. (*State v. Cook,* 17 Kan. 392; *State v. Frideaux,* 207 Kan. 790, 487 P. 2d 541.) The ultimate question of the sufficiency of the proof is, of course, for the jury to determine. There was some evidence in this case indicating that the envelope containing the money had been opened and the money examined subsequent to the taking of the money from Tyus' possession. There was nothing in the evidence, however, to show that the money was exchanged for other bills or that it was not in fact the same money. Hence we find no error in the admission of money into evidence on this ground.

Appellants contend that the verdict of guilty was not sustained by substantial, competent evidence. We hold that the evidence in this case clearly was sufficient to justify a conviction of both appellants of the crime of aggravated robbery. The evidence was completely undisputed that a robbery occurred. Both of the appellants were identified as two of the three robbers by C. L. Davis, by Ramon Rabon who followed appellants from the robbery scene in his car, and by Craig (Moon) Davis, who saw the robbers run from the store. The appellant Tyus was also identified by James R. Cave, an employee of Southtown Motors, as one of the men who were present when the pea-green Ford which was used as the getaway car was rented. This contention is clearly without merit.

The appellant Tillman maintains that he was subjected to an illegal and unfair lineup. It is undisputed that before participating in a lineup at the Kansas City, Missouri, police department both appellants were advised of their constitutional rights and both of them signed waivers. The question of validity of the waivers was presented to the trial court in a pretrial hearing and the waivers were upheld. There is no evidence in the record which would render the signed waivers improper or unlawful in any respect. The evidence does not show that the identification at the lineup had any particular significance in the case. The identification of both of the appellants was made at the scene of the robbery and

again at Southtown Motors at the time the appellants were arrested. The validity of the lineup was considered by the court in a separate independent hearing and there is nothing in the record to show that the court was in error in refusing to suppress the testimony in connection with it.

The appellant Tyus contends that the court erred in admitting into evidence a list of serial numbers which the victim, C. L. Davis, testified he prepared prior to the robbery. Several of these serial numbers coincided with the serial numbers on bills taken from the person of the appellant Tyus. The question was raised at the trial as to whether or not the list was rigged to strengthen the state's case. It cannot be denied that some of the circumstances surrounding the preparation of the list were suspicious. However, C. L. Davis testified that it was his practice to prepare a list of the large bills that he received from the bank and that the list submitted in this case had been prepared prior to the robbery. The objection made at the trial to the admission of the list into evidence went to the weight of the evidence and not to its competency. In other words the foundation was sufficient to justify the trial court in its discretion in admitting the list of serial numbers into evidence and it was up to the jury to determine whether or not it should have been given any weight in determining the guilt or innocence of the appellants.

Appellant Tyus contends that the trial court erred by increasing his sentence to a minimum of 30 years after having previously imposed a minimum sentence of 15 years. This contention is without merit. In the first place the trial court did not actually impose a sentence of 15 years to life. The only reference to 15 years was in a statement by the court as follows:

"The Court: I am saying that the maximum of a Class B felony, minimum-maximum, is fifteen years for the maximum on the minimum, and doubling that makes thirty. So he will be sentenced to not less than fifteen years nor more than life."

It should be noted that the court's statement is that Mr. Tyus *will be* sentenced to not less than 15 years nor more than life. This statement was made prior to the actual imposition of a sentence. The record discloses that the court made the following statement later:

"So that there isn't any question in the record, Mr. Tyus is being sentenced —this is your client, Mr. Lundblad, I believe, to a term of not less than thirty years nor more than life under these provisions."

It is clear that only one sentence was imposed which was a sentence of not less than 30 years nor more than life. In addition to this even if the lesser sentence had been imposed by the court, the court could still have changed the sentence at any time prior to the time the sentence began to run. *(State v. Lyon,* 207 Kan. 378, 485 P. 2d 332; *State v. Hughes,* 35 Kan. 626, 12 Pac. 28; *Parks v. Amrine,* 154 Kan. 168, 117 P. 2d 586.) In this regard the rule is that a sentence begins to run when the custody of the defendant is delivered to the sheriff. *(State v. Dearman,* 199 Kan. 357, 359; 430 P. 2d 285 and the cases cited in the annotation in 159 A. L. R. 161.) In this case the record shows that after the court made mention of an intention to sentence to a term of not less than 15 years, Mr. Tyus was told to be seated. Immediately thereafter the court discussed the sentence and the effect of the Habitual Criminal Act with appellant Tyus and his attorney, Mr. Lundblad, and then sentence was imposed for a minimum term of not less than 30 years. There is nothing in the record to show that the custody of appellant Tyus was ever delivered to the sheriff after mention of the 15 years. Hence the trial court properly imposed a term of not less than 30 years and not more than life under the provisions of the Habitual Criminal Statute K. S. A. 1971 Supp. 21-4504.

The judgment is affirmed.