No. 48,082

STATE OF KANSAS, *Appellee*, v. GEORGE BAKER, *Appellant*.

(549 P. 2d 911)

Opinion filed May 8, 1976.

*Lawrence G. Zukel,* of Kansas City, argued the cause and was on the brief for appellant.

*Dennis L. Harris,* deputy district attorney, argued the cause, and *Curt T. Schneider,* attorney general, and *Nick A. Tomasic,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

FATZER, C. J.: The appellant, George C. Baker, was found guilty by a jury of the crimes of burglary (K. S. A. 21-3715) and theft over $50 (K. S. A. 21-3701). His motion for a new trial was overruled and he perfected this appeal.

The state's evidence is summarized: Peter Von Schwarzbek and Cynthia L. Shaffer lived in Apartment No. 2 that was burglarized. Cynthia is employed and left the apartment at 7:30 a. m. on January 20, 1975. Peter is a student at the Kansas University Medical Center, and also left the apartment that morning. He returned to the apartment for about 15 minutes at 1:30 p. m. When he left, the television was in the apartment and he locked the front and back doors. On his way out of the apartment complex, Peter passed two men in the foyer. At the trial, he identified one of the men as the appellant.

A postman testified he saw a strange car with two men enter the apartment complex and park. The postman noticed the two men go through a few of the buildings. He passed through the laundry room on his rounds and encountered the same two men. To his casual "hi," they simultaneously responded, "I'm doing my laundry" and "I'm reading the light meter." The postman told the manager someone was walking through the buildings, and she was about to call the police when the car and the two men left. In a couple of minutes, the car returned and the manager called the police officers.

Arriving in a few minutes, the police talked to the postman and then drove to where the car was parked. As the police approached, the appellant jumped out of the car and ran to the laundry room door. The officer ordered the appellant to stop and inquired about his presence in the apartment complex. The appellant informed the officer he was drying his laundry. When checked by Officer O'Donnell the dryers were empty. Officer O'Donnell then made inquiries as to the ownership of the car and where the driver lived. He was told that Mr. Pappas, the other occupant, owned the car

and lived in Johnson County. At that time, the automobile had one Missouri license plate displayed on the rear.

The officers secured the two men and the car, and then checked the security for the apartments in the building. The door to Apartment No. 2 was unlocked. On entering, the officers observed an empty television stand (a dust outline indicated where the television had been).

The appellant and his accomplice were then arrested and taken to the Kansas City police department where Mr. Pappas signed a waiver of search of his automobile. The trunk of the automobile was searched and a television was recovered. The television was later identified by receipt and serial number as being the property of Cynthia Shaffer.

Miss Shaffer testified that two or three silver dollars were missing from her jewel box. The investigating detective observed a coin imprint in the felt lining of the jewel box.

The officers found three sets of keys on rings in the course of their investigation at the scene. One set was found on an electrical junction box right inside the doorway where the appellant was stopped by the officer. The other two sets of keys were found in the car. Three silver dollars were found in the appellant's pocket.

All the items recovered at the scene on January 20, 1975, were turned into the police department property officer on February 7, 1975. The items stayed in his custody until four or five days before the trial when he gave them to the district attorney. Both the arresting officer at the scene and the property officer testified all the items were in the same form and configuration when they viewed them at the trial as when they first saw them and had them in their custody and control.

At the close of the state's evidence, and out of hearing of the jury, the state's three exhibits were admitted into evidence over the defendant's objection.

Exhibit 1 included the two sets of keys found in the car and the Missouri license plate. The defendant objected on grounds of chain of custody and that the keys had not been shown to be relevant evidence. The court criticized the practice of the prosecutor's office of obtaining items from the property officer several days before trial but found the items had been sufficiently identified by the officer who recovered them, and received the exhibits into evidence.

Exhibit 2 was the three silver dollars. The defendant objected to their admission on the grounds it had not been shown the silver dollars were the ones missing from Cynthia's jewel box and that defendant's testimony would be that he saves silver dollars. The objection was overruled.

Exhibit 3 was the set of keys found in the laundry room near the door where the appellant had been stopped by the officer. The defendant's objection to Exhibit 3 was overruled and it was received into evidence.

The state rested its case, and the defendant's motion for discharge was overruled.

Thereafter, the defendant presented his case. He testified in his own behalf that he had met Peter Von Schwarzbek in a bar on Saturday night, January 18, 1975. At that time, Peter told him he was breaking up with his girl and wanted to sell the television set he kept at the apartment. He further testified that on Monday, January 20, he received a call from Peter while he was at the same bar. They agreed on a price for the television of $75. Peter instructed the appellant to go to the apartment complex, to pick up the television in the laundry room, and to wait out in back for Peter to come by so appellant could pay him. The appellant and Pappas did as instructed, got the television from the laundry room and loaded it in the trunk of the car. They left briefly to get cigarettes and had returned to wait for Peter when they were arrested. At the trial, Peter denied ever meeting either man prior to the day of the burglary.

At the close of all the evidence, the defendant's motion for a directed verdict was overruled. Following the jury's verdict of guilty and the overruling of the defendant's motion for a new trial, this appeal was perfected.

The appellant first contends the district court erred in admitting certain keys, coins, photographs and other items into evidence, without proper foundation, all of which were immaterial and denied defendant a fair trial. Boiled down, the argument is: (1) Entry to the apartment was obtained without force; therefore, a key was needed, (2) the three rings of keys were never tied to appellant, i. e., there was no evidence to connect him with the keys found in Pappas' car or those found in the laundry room, (3) it was never ascertained if any of the recovered keys would open the door to the apartment, (4) due process requires that the police try the keys in the lock to prove one of them opened the door, and

(5) the state had complete control of the evidence (keys) yet took no steps to prove appellant's *capacity* to open the lock; without such a showing, the keys were immaterial and irrelevant.

The appellant further argues it was prejudicial error to admit the silver dollars found in his pocket. Cynthia could not identify them or lay a foundation for their admission. The appellant explained why he had them; he testified that he always carried them and used them to flip when he shot pool.

The appellant contends gaps in the chain of custody and lack of proper foundation render the foregoing evidence inadmissible.

Was the evidence relevant? We think it was. "[R]elevancy [is] a matter of logic and experience and not of law. . . . If an item of evidence tends to prove or disprove a proposition, it is relevant to that proposition. . . ." Slough, *Relevancy Unraveled,* 5 Kan. L. Rev. 1 (1956). The standard of relevancy is whether the evidence offered renders the desired inference more probable than it would be without the evidence. 1 Jones on Evidence § 4:1 (6th ed. 1972).

K. S. A. 60-401 sets out the following definitions:

"(*a*) 'Evidence' is the means from which inferences may be drawn as a basis of proof in duly constituted judicial or fact-finding tribunals, and includes testimony in the form of opinion, and hearsay.

"(*b*) 'Relevant evidence' means evidence having any tendency in reason to prove any material fact."

Admissibility of evidence is largely within the discretion of the district judge, subject to exclusionary rules. *E. g., State v. Brown,* 217 Kan. 595, 538 P. 2d 631. In his commentary to § 60-407, Judge Gard notes:

"[This statute] simply recognizes the fundamental principle that the primary test of admissibility of evidence is its relevancy to the issue being investigated; and that the trier of fact should have all the relevant evidence which is offered unless some overriding consideration of policy or expediency requires its exclusion." S. Gard, Kansas Code of Civil Procedure 370 (1963).

The district judge has considerable discretion to exclude evidence if he finds its probative value is outweighed by the danger the jury may be unduly prejudiced. See K. S. A. 60-445.

In *State v. Brown,* supra, at 599, it was said:

"In discussing relevancy, we have frequently said that to be admissible in the trial of a case evidence must be confined to the issues, but it need not bear directly upon them. To render evidence of collateral facts competent, there must be some natural, necessary or logical connection between them and the inference or result which they are designed to establish. (*State v. Fagan,*

213 Kan. 587, 518 P. 2d 552; *State v. Gauger,* 200 Kan. 563, 438 P. 2d 463; and *In re Estate of Isom,* 193 Kan. 357, 394 P. 2d 21.)"

With respect to the keys, there are really two sub-issues of relevancy: (1) *location* of the keys when found and (2) *capacity* of the keys to open the door of the burglarized apartment. The inference which admission of the keys sought to establish was that appellant used one of the keys to enter the apartment. With respect to the three silver dollars, the inference their admission sought to establish was that the appellant took them from Cynthia's jewel box.

It seems clear that the *location* of the keys (in the car and near appellant) and the money (in his pocket) had a strong tendency in reason to prove facts material in this case. Under the circumstances shown by the evidence, there is a logical connection between the keys and money and the crime charged. Items found in the possession of a defendant at the time he is taken into custody are part of the total circumstances surrounding his presence near the scene of a crime and are pertinent as tending to explain his actions at the time of arrest and his purpose for being in the vicinity. Such evidence of attending circumstances, including property found in the accused's possession, is relevant and admissible when the circumstances logically tend to connect the accused with the crime charged. *State v. Fagan,* 213 Kan. 587, 518 P. 2d 552; 22A C. J. S., Criminal Law, § 628.

Having possession or access to the keys likewise makes the keys relevant.

". . . [W]here an accused is identified as having been at or near the scene of a crime about the time of its commission evidence showing that he owned, possessed or had access to any articles with which the crime was or might have been committed is competent." *State v. Montgomery,* 175 Kan. 176, 180, 261 P. 2d 1009.

The location of the keys and money coupled with all the testimony raised an inference that appellant entered the apartment and took the money and the television. The fact that Cynthia could not positively identify the money as that taken from her jewel box went to the weight and not the admissibility of such evidence. *State v. Ridge,* 216 Kan. 73, 530 P. 2d 1213.

The same may be said with respect to the *capacity* of appellant to enter the apartment with any of the keys. Although there was no evidence showing any of the keys opened the door, this would go

to weight rather than admissibility. As this court said in *State v. Wilson*, 215 Kan. 437, Syl. ¶ 4, 524 P. 2d 224:

"Admissibility of physical evidence is within the sound discretion of the court and is to be determined by the court on the basis of its relevance and connection with the accused and the crime charged."

While it is obvious the chain of custody on the evidence in question could have been better, we think the defects in the chain do not constitute reversible error. *State v. Tillman*, 208 Kan. 954, 958-59, 494 P. 2d 1178, 1182, provides guidelines for chain of custody considerations:

". . . [A] party who offers an object into evidence must show that it is reasonably certain that there have been no material alterations of the object since it was first taken into custody. It is not necessary, however, that the object offered into evidence should have been kept continuously under lock-and-key or continuously sealed up. The preliminary proof of the identity of the object and that the same has not been improperly tampered with, is first to be determined by the trial court. It is not necessary that all possibility of its being tampered with should be excluded. (*State v. Cook*, 17 Kan. 392; *State v. Frideaux*, 207 Kan. 790, 487 P. 2d 541.) . . ."

We relied on *State v. Tillman*, supra, in *State v. Horne*, 215 Kan. 448, 524 P. 2d 697.

Here, eighteen days elapsed between the date the arresting officer obtained the evidence until he turned it in to the property officer. The district attorney got it from the property officer about a week before trial. At oral argument, the district attorney said he kept the evidence in his brief case in his office.

In *State v. Reed*, 214 Kan. 562, 520 P. 2d 1314, the court characterized the *Tillman* test for chain of custody as "reasonable certainty that no material alterations of the objects occurred." 214 Kan. at 566, 520 P. 2d at 1318. In the instant case, the arresting officer and property officer both testified the evidence was in substantially the same form and configuration as when it first came into their possession. While the state's chain of custody showing cannot be termed commendable, it is adequate to meet our test.

The appellant next contends the district court erred in denying his motions for acquittal and for a new trial because there was insufficient evidence to submit the case to the jury. The point is not well taken.

The rule governing appellate review of a claim of insufficiency of the evidence is well stated in *State v. Crosby*, 182 Kan. 677, 324 P. 2d 197, 76 A. L. R. 2d 514, where it was held:

"On appellate review of a conviction of a criminal offense the fact that incriminating circumstantial evidence might also be deemed compatible with innocence is not controlling, and the question before this court is not whether such evidence is incompatible with any reasonable hypothesis except guilt. That is a question for the jury and the trial court, and this court's function is limited to ascertaining whether there is a basis in the evidence for a reasonable inference of guilt.

"It is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before a verdict of a jury which has been approved by the trial court may be set aside on appeal on the ground of insufficiency of evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the trial court." (Syl. ¶¶ 4, 5.)

Accord, *State v. Brown*, supra; *State v. Ritson*, 215 Kan. 742, 529 P. 2d 90; *State v. Gauger*, 200 Kan. 563, 438 P. 2d 463.

In *State v. Soverns*, 215 Kan. 775, 529 P. 2d 181, it was said:

". . . In considering the sufficiency of evidence to sustain a conviction, this court looks only to the evidence which supports the verdict. It does not weigh the evidence and if the essential elements of the charge are supported by any competent evidence, the conviction must stand. (*State v. McCollum*, 211 Kan. 631, 507 P. 2d 196.) . . ."

Governed by these rules, we find the record reflects sufficient evidence to support the conviction.

The jury need not believe the appellant's version of the incident. Since it convicted appellant, it is presumed to have believed the state's evidence and to have drawn from it all inferences favorable to the state. *State v. Ridge*, supra. The jury is the exclusive judge of all material questions of fact. It is entitled to draw reasonable inferences from the evidence and is the judge of the inferences as well as the established facts. *State v. Gauger*, supra; *State v. Greenwood*, 197 Kan. 676, 421 P. 2d 24. Implicit in the jury's verdict was a finding that appellant entered the apartment in question and took the television and money.

The appellant's final point is that the district court erred in failing to admonish the district attorney when he made a prejudicial remark in his closing argument concerning evidence which should not have been introduced. The remark in question was:

"And look at those keys, the volume and number of those keys. *They are door keys, they are apartment keys.*" (Emphasis added.)

In *State v. Wilkins*, 215 Kan. 145, Syl. ¶ 3, 532 P. 2d 728, we held:

"In summing up a case before a jury, counsel may not introduce or comment on facts outside the evidence, but reasonable inferences may be drawn

from the evidence and considerable latitude is allowed in the discussion of it in which he may use illustrations and appeal to the jury with all the power and persuasiveness which his learning, skill and experience enable him to use. (Following *State v. Potts*, 205 Kan. 47, 468 P. 2d 78.)"

Further guidance on prosecutorial conduct in summation is found in *State v. Murrell*, 215 Kan. 10, 523 P. 2d 348:

"We are aware of the rule that misconduct on the part of a prosecutor in going outside the record in the heat of final argument may be so gross and fraught with such prejudice as to deny the accused a fair trial and to require a reversal. (*State v. Kelley*, 209 Kan. 699, 704, 498 P. 2d 87.) Especially has this rule been applied where the prosecuting attorney has persisted in his use of statements calculated to inflame the passions and whet the prejudice of the jury. (*State v. Majors*, 182 Kan. 644, 323 P. 2d 917; *State v. Wilson*, 188, Kan. 67, 360 P. 2d 1092.)

"It is a salutary rule. There are, indeed, bounds which may not be exceeded by a zealous prosecutor lest his remarks deny the accused his right to a fair trial. . . . [W]e believe that no reversible error has been shown for the following reasons:

"First, there is the lack of any objection being interposed. . . ."

\* \* \* \* \*

"[S]econd . . . it cannot be said that any prejudice has been shown which would jeopardize the accused's right to a fair trial. . . ."

\* \* \* \* \*

"[B]efore an objectionable statement made by a prosecutor on matters outside the record will entitle the accused to a reversal of his conviction it first must appear that it was injurious to him and was likely to affect the jurors to his prejudice. (5 Wharton's Criminal Law & Procedure, p. 247.)"

It does not appear that the district attorney's statement in the instant case exceeded permissible bounds.

The judgment of the district court is affirmed.