THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GERALD CLARK, Defendant-Appellant.

Fifth District   No. 76-18

Opinion filed March 4, 1977.

Michael J. Rosborough and John H. Reid, both of State Appellate Defender's Office, of Mt. Vernon and Peter Stragand, research assistant, for appellant.

James A. Flummer, State's Attorney, of Cairo (Bruce D. Irish and Roger R. Kasny, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant Gerald Clark was found guilty by a jury of armed robbery and a lesser included felony theft in the circuit court of Alexander County. The court entered judgment only on the armed robbery and imposed a sentence of 8 to 20 years in the penitentiary. Defendant presents three issues for review: (1) Whether his arrest in Missouri and the subsequent search of his truck was lawful under the theory of "hot pursuit"; (2) whether the court erred in ordering defendant's sentence to run consecutively to an anticipated, but as yet unimposed, term of imprisonment in Oklahoma; and (3) whether the sentence must be vacated and the cause remanded because the judgment order is too vague to effect a consecutive term of imprisonment.

At approximately 3:06 p.m. on May 23, 1975, the dispatcher of the Cairo Police Department received a telephone call from an employee of Rye's Jewelry Store in Cairo concerning an armed robbery that had just occurred. Accompanied by two other police officers, Cairo Detective Steve Thomas proceeded downtown toward the store. Detective Thomas radioed Kentucky Police and asked them to seal off the bridge leading from Illinois to Kentucky. While still enroute to the scene, the officers were notified that the robbery suspects had left the area via a one-way street leading to the main highway in a white International pickup truck. The suspects were described as a juvenile, a white male, and a male dressed as a female.

After receiving this later report, Cairo authorities contacted their Missouri counterparts in Poplar Bluff, Missouri, which is over 10 miles

from the Illinois border. After being informed that no Missouri trooper was in the immediate area, the Cairo policemen proceeded south over the bridge into Missouri in pursuit of the suspects. Seven miles into Missouri the suspect vehicle was sighted and stopped by the Cairo Police. Defendant and two other men were taken into custody at about 3:23 p.m.

During the arrest of the suspects, Cairo Police seized several items, including a gun identified as the robbery weapon, and a blue metal box taken from the jewelry store. This box contained a $300 diamond ring, a $35 watch and a $350 coin collection. These items were identified as property taken from the jewelry store at gunpoint. Defendant's motion to quash the arrest and to suppress all evidence seized incidental to the arrest was denied by the trial court on the ground that the arrest and seizure of the evidence was lawful under the doctrine of "hot pursuit."

The evidence at trial established beyond a reasonable doubt that defendant, while dressed in women's clothing and armed with a gun, robbed the jewelry store.

Defendant contends that the court erred in refusing to quash the arrest and suppress the evidence obtained as a result thereof. In particular, he asserts that the circumstances of the arrest fail to evidence "hot pursuit" as a matter of law.

■■ In Illinois the police powers that may be exercised by municipalities are statutorily outlined in the following language:

> "The territory which is embraced within the corporate limits of adjoining municipalities within any county in this State shall be a police district." Ill. Rev. Stat. 1975, ch. 24, par. 7—4—7.

> "The police of any municipality in such a police district may go into any part of the district to suppress a riot, to preserve the peace, and to protect the lives, rights, and property of citizens.

> For these purposes the mayor of any municipality in the district, and the chiefs of police therein, shall use the police forces under their control anywhere in the district." (Ill. Rev. Stat. 1975, ch. 24, par. 7—4—8.)

In addition, section 107—5(c) of the Code of Criminal Procedure of 1963 provides that "[a]n arrest may be made anywhere within the jurisdiction of this State." (Ill. Rev. Stat. 1975, ch. 38, par. 107—5(c).) Furthermore, it has been held that an arrest warrant issued by an Illinois court of proper jurisdiction may be executed by an Illinois police officer anywhere in the State. *People v. Carnivale*, 61 Ill. 2d 57, 329 N.E.2d 193.

■■■ But the foregoing statutes and case law do not abrogate the general common law rule that municipal peace officers have no authority to make a warrantless arrest outside the political entity in which they hold office. (See *People v. Carnivale*.) The sole exception to this rule arises when the officer is engaged in "hot" or "fresh pursuit." (*Krug v. Ward*, 77

Ill. 603; *Taylor v. City of Berwyn*, 297 Ill. App. 417, 17 N.E.2d 1007.) "Fresh pursuit" is defined by statute in Illinois as the "immediate pursuit of a person who is endeavoring to avoid arrest." Ill. Rev. Stat. 1975, ch. 38, par. 107—4(a)(3).

Since there is authority for the proposition that the validity of an arrest without a warrant for State offenses is determined by the law of the State in which the arrest occurred, and since the arrest in this case took place in the State of Missouri, we think it is necessary to review the applicable laws of that State to determine if a different rule should apply. (See *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972); *State v. Morris*, 522 S.W.2d 93 (Mo. App. 1975); *Keeny v. Swenson*, 458 F.2d 680 (8th Cir. 1972).) The doctrine of "fresh pursuit" in Missouri is governed by the Uniform Fresh Pursuit Law. The applicable Missouri statute gives "[a]ny member of a duly organized state, county, or municipal peace unit of another state of the United States * * * the same authority to arrest * * * [as any law enforcement official of Missouri]." (Mo. Ann. Stat. §544.155 (Vernon 1951).) The term "fresh pursuit" as used in the statute "shall not necessarily imply instant pursuit, but pursuit without unreasonable delay * * * " and "includes fresh pursuit as defined by the common law * * *." Mo. Ann. Stat. §544.155 (Vernon 1951).

Thus, it is apparent that under both Illinois and Missouri law the arrest in this case can be sustained only if it fits within the definition of "fresh pursuit." Of course, whether defendant's arrest was valid under the doctrine of fresh pursuit must be determined by the circumstances of this particular case.

■■ In this case the Cairo police officers had a description of both the defendant and his companions and of the vehicle in which they were making their getaway. The police had reason to believe that the robbers were heading south out of town. They had knowledge that the bridge into Kentucky was blocked off and that the suspects were still at large when the officers reached the Missouri border. The police officers were also clearly aware that there were only two main roads leading south out of town. They had taken the precaution of setting up a road block on the main exit to the north of Cairo. Only 17 minutes elapsed from the time the police were informed of the crime until they apprehended the defendant and his companions seven miles into Missouri. In light of the foregoing facts, we are persuaded that the pursuit by the Cairo officers possessed the requisite qualities of immediacy. Consequently, we find that the arrest of defendant was within the "fresh pursuit" exception not only to the municipal jurisdiction rule but also to the arrest warrant requirement and was therefore lawful.

Defendant places a great deal of reliance on the statement in the recent case of *United States v. Lindsay*, 506 F.2d 166 (D.C. Cir. 1974), that

"speed and continuous knowledge of the * * * perpetrator's whereabouts are the elements which underpin this exception to the warrant requirement." (506 F.2d 166, 173.) Defendant argues that the Cairo police had no "continuous knowledge" of his whereabouts and hence could not have arrested him in fresh pursuit. Detective Thomas, by his own testimony, had no actual knowledge that defendant had crossed the State line into Missouri.

In support of its "continuous knowledge" requirement the court in *Lindsay* cited *Warden v. Hayden*, 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967), and *Dorman v. United States*, 435 F.2d 385 (D.C. Cir. 1970). However, we do not read either *Hayden* or *Dorman* as supporting the second element of "hot pursuit" set forth in *Lindsay*. In *Hayden*, the United States Supreme Court found a warrantless arrest lawful due to the "exigent circumstances" involved in the pursuit of a suspected felon. In so doing, the Court stressed the element of immediacy of pursuit. *Dorman* provides a test for the circumstances justifying a warrantless entry of a house to make an arrest and creates an exception to the arrest warrant requirement independent of the "hot pursuit" exception. Neither of these cases specifically discusses the continuous knowledge of the alleged perpetrator's whereabouts as essential to a determination of "hot pursuit."

Nor does the case of *State v. Tillman*, 208 Kan. 954, 494 P.2d 1178 (1972), also cited by defendant, consider this factor crucial. In that case three escaping robbers were observed and followed by a private citizen in his car across the border between Kansas City, Kansas and Kansas City, Missouri. Before undertaking the pursuit, the citizen had directed his wife to notify the police that he was following the getaway car. The robbers abandoned their car in Kansas City, Missouri, and the citizen immediately telephoned both the Kansas City, Kansas and Kansas City, Missouri, police. By the time the Kansas officers had arrived at the place where the car had been abandoned, the Missouri police had already checked out the license number of the getaway car and determined it to be a rented car. The Kansas police officers went first to the address of the individual in whose name the car was rented and "staked out" his home for 15 to 20 minutes. They were then advised to proceed to the rental agency, where two of the men who had rented the car had just been observed. There, the victim of the robbery, who had accompanied the Kansas officers, identified the men as two of the robbers. The Kansas police took the two defendants into custody and awaited the arrival of the Missouri police, who re-arrested the defendants. The *Tillman* court had no hesitancy in concluding that the circumstances in that case clearly showed "fresh pursuit" within the meaning of the Missouri statute. The pursuit was said to be continuous, uninterrupted and without unreasonable delay. Thus, the court found the arrest was valid since the police had actual knowledge

that the robbery had been committed and since two of the defendants were identified by the victim prior to their arrest at the car rental agency.

Other recent decisions also fail to support the "continuous knowledge" requirement of Lindsay. For example, in *United States v. Bishop*, 530 F.2d 1156 (5th Cir. 1976), the court concluded that the warrantless arrest by officers outside their municipal jurisdiction was justified under the Louisiana "close pursuit" statute. In *Bishop*, bank robbers in Shreveport had stolen several packets of marked money, one of which was fitted by bank personnel with a small transmitter. A Shreveport police vehicle followed the suspects by reception of the tracking signal. Although the getaway car was lost momentarily, the police were able to follow the vehicle across the bridge into another Louisiana city. A companion Shreveport police car effected the apprehension and arrest of the robbers by responding to radioed directions given by the tracking vehicle.

■■ From our reading of all the above cases, we do not believe that the continuous surveillance of a fleeing suspect or the uninterrupted knowledge of his whereabouts is requisite to a finding of "hot" or "fresh pursuit." The pursuit in this case was continuous, uninterrupted and without unreasonable delay. In many instances the police or others may lose track of the fleeing felon momentarily or for longer times. Whether or not the pursuer can regain the trail and overtake his quarry depends on quick action and knowledge of the probable course of flight. Hence, we cannot say that the doctrine of "hot pursuit" demands the element of continuous knowledge urged by the defendant.

The remaining issues for our consideration involve the defendant's sentencing by the trial court. The order of the court in sentencing the defendant stated:

"The term of imprisonment ordered herein shall run consecutive to any term of imprisonment ordered by the Circuit or District Court of any sister state."

Because the defendant was on parole from an Oklahoma penitentiary at the time of this offense, he would potentially be subject to a sentence of imprisonment in that State for violation of parole.

■■ In its brief the People concede error on this point and we agree. Our supreme court has held that an Illinois circuit court judge has no power to impose a sentence to run consecutively to an anticipated, but as yet unimposed, sentence in another jurisdiction. (*People ex rel. Fleming v. Pate*, 48 Ill. 2d 426, 270 N.E.2d 4, *cert. denied*, 404 U.S. 1020.) Rather, it is the prerogative of the court which imposes the second sentence to determine the effect of the already imposed Illinois sentence. (*People ex rel. Fleming v. Pate*.) To do otherwise is violative of an Illinois defendant's right to due process of law. (*People ex rel. O'Connor v. Bensinger*, 48 Ill. 2d 440, 270 N.E.2d 1.) The consecutive sentence

imposed in this case falls squarely within the proscriptions noted above. For this reason we modify the sentencing order by striking that part which directs the sentence to be served consecutively. Because of this modification, we need not and do not address defendant's final contention which requests the same relief.

The judgment of the circuit court of Alexander County is affirmed as modified.

Affirmed as modified.

JONES and EBERSPACHER, JJ., concur.